Paul HOGAN et al., Appellants,

v.

COOKE PONTIAC COMPANY, Inc. et al., Appellees.

Court of Appeals of Kentucky.

March 17, 1961.

Rehearing Denied June 16, 1961.

S. J. Stallings, Glenn L. Schilling, Louisville, for appellants.

Fielden Woodward, Victor Ewen, Louisville, for appellees.

CULLEN, Commissioner.

On the morning of July 14, 1956, immediately after having received delivery of a new Pontiac automobile from Cooke Pontiac Company of Louisville, Paul Hogan, accompanied by his wife and children, embarked on a trip from their home in Clarksville, Indiana, to visit relatives in Williamsburg, Kentucky. They traveled a distance of 140 miles without incident. Then, at a point near Mount Vernon, Kentucky, an accident occurred in which their automobile left the road and overturned in a field. Hogan, his wife, and one child were injured. They brought actions against Cooke Pontiac Company and General Motors Corporation alleging that the accident was caused by defects in the brake system of the car for which the defendants were responsible by reason of their negligence in failing to discover the defects. The defendants denied that the brakes were defective, that they were negligent, or that the accident was caused by any defect in the brakes. They also cross-claimed against Hogan for contribution in the event they should be held liable on the claims of the wife and child.

The jury returned a verdict awarding the wife $16,000 and the child $500 against Cooke Pontiac Company only. The verdict did not specifically find in favor of General Motors Corporation on any of the claims, or against Hogan on his claim or in favor of the defendants on their cross-claim. However, no objection was made to the form of the verdict at the time it was returned, and the court entered judgment awarding damages to the wife and child against Cooke Pontiac in the amounts fixed by the verdict, allowing Cooke Pontiac recovery against Hogan for half of these amounts by way of contribution, dismissing Hogan's claim against both the defendants, and dismissing the claims of the wife and child against General Motors Corporation. Subsequently, on motions for judgment notwithstanding the verdict, the court set aside the judgment and entered a new judgment dismissing all of the claims. This was on the basis that the plaintiffs had failed to prove that the accident was caused by any defect in the brake system and therefore the defendant's motions for a directed verdict should have been sustained. Hogan and his wife have appealed and a motion for an appeal has been filed on behalf of the child.

Hogan testified that during the trip, up to the point of the accident, the brakes had worked perfectly. His version of the acci-

dent was that he came up behind a slow moving car preceding him; he turned slightly into the left lane preparatory to passing this car and observed an automobile approaching from the opposite direction which would prevent him from passing; he "tapped" his brakes in order to pull back in behind the car in front of him and his car went out of control; it went off the road to the right and overturned in a field some 45 feet from the highway. It was proved by other witnesses that there were skid marks of the Hogan car on the pavement extending 72 feet back from the point where the car left the road. These marks were made by the left front wheel and the two rear wheels.

The Hogan car was taken to a local garage. Some five or six days after the accident the garageman and an employe, both of whom did mechanical work on cars, undertook to inspect the car. They found that the master brake cylinder was completely empty of fluid. They also removed the right front wheel and found that after the wheel and drum were removed the primary brake shoe was out of position. The plaintiffs' case was based upon the testimony of these two men.

 The testimony of expert witnesses for the defendants proved conclusively (and indeed it is a matter of common knowledge) that the brakes could not have been applied so as to skid three of the wheels if there had been no fluid in the master cylinder at the time of the accident. The two mechanics who testified for the plaintiffs did not dispute this. Furthermore, Hogan did not claim that his brakes completely failed at the time of the accident. We think it is clear, therefore, that the accident could not have been caused by lack of fluid in the master cylinder. (The subsequent absence of fluid could have been due to the fluid draining out through a vent plug in the top of the cylinder when the car was lying upside down, or by a break in one of the lines running from the cylinder occurring when the car went off the road and over-

turned. No one undertook to testify as to the condition of the lines.)

. ██ The question then is addressed to the alleged improper position of the brake shoe in the right front wheel. One of the plaintiffs' mechanics testified that this would cause the brake to drag or bind. This is somewhat difficult to accept in view of Hogan's testimony that the brakes worked perfectly for 140 miles and in view of the fact that the right wheel did not skid at the time of the accident. The other mechanic said that the position of the shoe would result in the brake not taking hold properly, so that in applying the brakes the car would pull to the left by reason of there being more braking power in the left front wheel. This is consistent with the failure of the right wheel to skid in the accident but is not consistent with Hogan's testimony that the brakes worked perfectly before the accident and that at the time of the accident the car pulled to the *right*.

Regardless of these inconsistencies, we think the evidence for the defendants showed conclusively that the brake shoe could not have been extended out of position (as the plaintiffs' mechanics said they found it after they had removed the wheel) when the wheel was on the car. The defendants introduced in evidence, and demonstrated, a new right front wheel assembly of a 1956 Pontiac car. The demonstration showed that the drum could not be placed over the shoes with the shoes out of position. Indeed, as a simple physical fact, it is obvious that the shoes would have to be compressed to a diameter smaller than that of the drum in order for the drum to fit over them. The position of the shoes testified to by the plaintiffs' mechanics was such that their diameter exceeded that of the drum.

The demonstration and the testimony of expert witnesses for the defendants showed that a shoe could be pulled out of position in removing the wheel, but would have to be placed back in proper position before the wheel could be put back on. Also, the evidence was that by reason of the physical

structure of the brake and wheel assembly the shoes could not get in a cocked or crooked position when inside the drum. While the plaintiffs' mechanics undertook to testify that this could happen, the demonstration showed that it could not happen.

We concur in the conclusion of the trial court that the evidence failed to prove a defect with respect to the positioning of the brake shoes in the right front wheel. It is true that the fact that this wheel did not skid in the accident raises a possibility that *something* was wrong with the brake on this wheel, but the plaintiffs did not prove a specific defect.

It is our opinion that the trial court properly granted judgment n. o. v. in favor of the defendants.

■ The appellants maintain that the court erred in admitting in evidence, over their objection, the model wheel assembly and in permitting demonstrations to be made with it. We think the evidence sufficiently established that the assembly was a true replica of that in the Hogan automobile. This being so, the assembly was admissible as a useful aid to the jury in understanding the evidence and in obtaining a clear comprehension of the physical facts. Cincinnati, N. O. & T. P. Ry. Co. v. Duvall, 263 Ky. 387, 92 S.W.2d 363; 20 Am.Jur., Evidence, sec. 740, pp. 616, 617. The experiments or demonstrations with the model assembly also were permissible. 20 Am. Jur., Evidence, sec. 755, p. 627.

■ A further contention of the appellants is that the trial court erred in refusing to permit Hogan to show that his automobile was moved from the local garage where it was taken after the accident, to the garage of Cooke Pontiac Company, without his permission. The object of this evidence would have been to suggest that by taking possession of the car the company put itself in a position where it could conceal or secretly correct any defects in the brake system. The trouble with this is that while the tendered evidence might have shown

a reason why the plaintiffs did not produce more adequate evidence of defects in the car, it could not serve to supply the deficiency in their evidence as to defects.

The motion for an appeal on behalf of the child is overruled and the judgment is affirmed as to all parties.